**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

DWON CHALK,                              )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          1:20CV1174
                                         )
KILOLO KIJAKAZI,                         )
Acting Commissioner of                   )
Social Security,                         )
                                         )
                    Defendant.[1]        )


**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Dwon Chalk, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 14; see also Docket Entry 13 (Plaintiff's Memorandum); Docket Entry 15 (Defendant's Memorandum); Docket Entry 16 (Plaintiff's Reply)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of January 1, 2015.  (Tr. 238-39, 249-51.)  Upon denial of those applications initially (Tr. 84-118, 159-69) and on reconsideration (Tr. 119-54, 173-82), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 183-84).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 30-64), during which Plaintiff amended his onset date to July 28, 2017, the day after an ALJ's decision denying Plaintiff's previous claims for DIB and SSI (see Tr. 53).  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 9-23.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 233-37), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the . . . Act through September 30, 2016.

2.   [Plaintiff] has not engaged in substantial gainful activity since July 28, 2017, the amended alleged onset date.

3.   [Plaintiff] has the following severe impairments: Degenerative disc disease of the lumbar and cervical spines, osteoarthritis, plantar fasciitis, obesity and depression.

. . .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

2

the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional
capacity to perform light work . . . except he is limited
to frequent handling, fingering, reaching and feeling
with the bilateral extremities. He must never climb
ropes, ladders or scaffolds and he can only occasionally
climb ramps and stairs. He is limited to frequent
balancing, stooping, kneeling and crouching, but only
occasional crawling. He must avoid concentrated exposure
to extreme cold, noise and hazards. He must have no work
involving complex decision-making, crisis situations or
constant changes in routine. He is limited to frequent
interaction with the public, supervisors and with co-
workers. He can stay on task for two hours at a time.

. . .

6. [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from July 28, 2017, through the
date of this decision.

(Tr. 15-23 (bold font and internal parenthetical citations

omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security

Commissioner's denial of social security benefits." Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

3

of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

4

adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in
(continued...)

7

## B. Assignments of Error

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ fail[ed] to incorporate non-exertional limitations on the ability to stay on task where the ALJ first f[ound] that [Plaintiff] was moderately impaired in the maintenance of concentration, persistence, or pace (CPP)" (Docket Entry 13 at 11-12 (underscoring omitted); see also Docket Entry 16 at 1-3);

2) "[t]he ALJ err[ed] by concluding that [Plaintiff] could perform other work existing in significant numbers in the national economy where there was no foundation for these findings in the [Dictionary of Occupational Titles ('DOT')] or other reliable publications, and the ALJ fail[ed] to resolve conflicts in the VE's testimony on the issue of job numbers" (Docket Entry 13 at 15 (underscoring omitted); see also Docket Entry 16 at 5-6); and

3) "[t]he ALJ err[ed] by failing to follow the rules for evaluating medical opinions and by failing to properly determine the persuasiveness of the opinion" (Docket Entry 13 at 21 (bold font and underscoring omitted); see also Docket Entry 16 at 3).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (See Docket Entry 15 at 4-15.)

---

[5] (...continued)
the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

**1. CPP**

Plaintiff's first issue on review contends that "[t]he ALJ fail[ed] to incorporate non-exertional limitations on the ability to stay on task where the ALJ first f[ound] that [Plaintiff] was moderately impaired in the maintenance of [CPP]." (Docket Entry 13 at 11-12 (underscoring omitted).) More specifically, Plaintiff contends that the United States Court of Appeals for the Fourth Circuit has "noted that[] 'the ability to perform simple tasks differs from the ability to stay on task[ and o]nly the latter limitation would account for a claimant's limitation in [CPP]'" and thus "held that an ALJ does not account for a claimant's moderate limitations in CPP by restricting the RFC or the hypothetical question to the [VE] to simple, routine tasks or unskilled work." (Id. at 12 (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)).) According to Plaintiff, "the ALJ placed no limitation in the RFC [] to [] simple repetitive tasks, a limitation which the ALJ concluded was appropriate in analyzing the paragraph B criteria [of Listing 12.04]." (Id. at 13 (citing Tr. 17).) Plaintiff further contends that the ALJ's finding that Plaintiff could stay on task for two hours at a time "reference[s ] customary breaks at two-hour intervals [and thus] provides no limitation to a standard work day." (Id. (citing Tr. 18); see also Docket Entry 16 at 2.) Plaintiff asserts that, "[a]part from the conclusory statement that 'there is nothing in the records to show that [Plaintiff] is

9

physically unable to meet the demands of the limited range of *sedentary* work outlined in his [RFC ],' the ALJ [] does not explain why further limitations in the RFC were not warranted." (Id. at 12-13 (quoting Tr. 20) (emphasis added by Plaintiff) (footnote omitted).) Plaintiff's contentions in this regard have merit and warrant remand.

The Fourth Circuit has held "that an ALJ cannot <u>summarily</u> 'account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work,' . . . [b]ut [the Fourth Circuit] did <u>not</u> impose a categorical rule that requires an ALJ to <u>always</u> include moderate limitations in [CPP] as a specific limitation in the RFC." <u>Shinaberry v. Saul</u>, 952 F.3d 113, 121 (4th Cir. 2020) (emphasis added). As a neighboring district court has explained:

> <u>Mascio</u> does not broadly dictate that a claimant's moderate impairment in [CPP] <u>always</u> translates into a limitation in the RFC. Rather, <u>Mascio</u> underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

<u>Jones v. Colvin</u>, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added). Here, the ALJ did not explain adequately enough to permit meaningful judicial review

how the RFC sufficed in light of Plaintiff's moderate deficit in CPP.

At step three of the SEP, the ALJ provided the following analysis:

> The medical records show [Plaintiff] underwent a psychological evaluation with consultative psychologist Dr. Cheri Anthony in April 2019. [Plaintiff] reported that his primary care provider placed him on anti-depressants but he had never been seen by a mental health provider nor had he spent time in a psychiatric hospital. Dr. Anthony concluded that [Plaintiff] did well on the mental status examination and he did not exhibit any significant cognitive issues. Thus, she concluded as follows and the [ALJ] finds Dr. Anthony's assessment <u>persuasive</u>:
>
> . . .
>
> With regard to [CPP], [Plaintiff] has a moderate limitation. He appears to have mild problems with stress management; this is likely to cause mild problems tolerating the stress pressures [sic] associated with day-to-day work activities. He should be able to sustain attention to perform <u>simple repetitive tasks</u> assuming they are within his physical limitation.

(Tr. 17 (emphasis added) (internal parenthetical citations omitted).) Despite finding "persuasive" Dr. Anthony's opinion that Plaintiff could "sustain attention to perform simple repetitive tasks" (<u>id.</u>), the ALJ neither included a limitation to simple repetitive tasks in the RFC (<u>see</u> Tr. 18), nor explained why he omitted such a restriction (<u>see</u> Tr. 18-21). <u>See</u> Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p") ("If the ALJ's RFC assessment conflicts with an opinion from a medical source, the

11

[ALJ] <u>must</u> explain why the opinion was not adopted." (emphasis added)). Indeed, the ALJ entirely failed to discuss Dr. Anthony's opinions as part of his analysis of the RFC. (<u>See</u> <u>id.</u>)[6] Moreover, that error does not qualify as harmless, as this Court cannot determine whether the jobs cited by the VE could accommodate a limitation to simple repetitive tasks, in addition to the other limitations included in the ALJ's dispositive hypothetical question. A VE must make that determination in the first instance.[7]

Further compounding that error, and as recognized by Plaintiff (<u>see</u> Docket Entry 16 at 3), although the ALJ agreed to hold the record open to receive the opinion of Plaintiff's treating physician Dr. Cecil M. Farrington (<u>see</u> Tr. at 35-36), and incorporated the opinion into the record at Exhibit 12F (<u>see</u> Tr. at 754-55), the ALJ wholly failed to discuss (much less determine the persuasiveness of) Dr. Farrington's opinion (<u>see</u> Tr. at 18-21). In

---

[6] Other opinion evidence of record does not help explain how the ALJ accounted for Plaintiff's moderate deficit in CPP in the RFC. The prior ALJ's decision, which the current ALJ found "persuasive" (Tr. 13), did not even find Plaintiff's depression a medically determinable impairment (<u>see</u> Tr. 70-71) and did not assign <u>any</u> mental limitations in the RFC (<u>see</u> Tr. 72). The state agency psychological consultants also found Plaintiff's depression <u>non-severe</u> and thus did not formulate a mental RFC. (<u>See</u> Tr. 93-94, 126-27, 143-44.) Moreover, the ALJ did not expressly determine the persuasiveness of the state agency psychological consultants' opinions. (<u>See</u> Tr. 20-21).

[7] Notably, the <u>DOT</u> rates the cashier II job at Reasoning Development Level 3 ("RDL 3"), <u>see</u> <u>DOT</u>, No. 211.462-010 ("Cashier II"), 1991 WL 671840 (G.P.O. 4th ed. rev. 1991), which the Fourth Circuit has found conflicts with a limitation to short and simple instructions, <u>see</u> <u>Keller v. Berryhill</u>, 754 F. App'x 193, 197-98 (4th Cir. 2018), while also noting that "[s]everal other courts of appeals have relied on precedent addressing a simple <u>tasks</u> limitation when considering a simple <u>instructions</u> limitation" and "conclude[d] that it [wa]s appropriate to do the same in [<u>Keller</u>]," <u>id.</u> at 197 n.4 (emphasis added).

that opinion, Dr. Farrington provided the following insights regarding Plaintiff's mental impairment:

> I have been the primary care provider for [Plaintiff] since November 2013. At that time he had his own barber shop. He was a happy young man, married with children; but he related to me that starting in 2012 he began having low back pain which was now radiating down his legs. . . . For about 3 months he looked unsuccessfully for a handicapped chair in which he could cut hair sitting down. He finally was forced to sell his barber shop.
>
> . . .
>
> He developed migraine headaches and frequent falls. . . .
>
> Some of the falls are experienced . . . in grocery stores or public places where he has to have help to get up and experiences significant embarrassment. . . . He has seen a psychiatrist . . . .
>
> . . .
>
> I have referred him over and over to all sorts of specialists and I do not have a list of diagnoses that I can present to you other than the degenerative disc disease and the list of symptoms mentioned above.
>
> But I can give you some diagnoses that I have watched develop over the past 7 years:
>
> 1.   Depression
> 2.   Insecurity
> 3.   Hopelessness
> 4.   Inadequateness
> 5.   Marital discord
> 6.   Mistrust/Distrust
> 7.   Sadness
>
> Unless you have evidence that proves that this application is not legitimate, I think the lack of hard diagnoses is not sufficient for you to deny this man disability.

(Tr. 754-55.) As the ALJ acknowledged (see Tr. 17), Dr. Farrington prescribed Plaintiff anti-depressants and constituted the sole

13

source of mental health treatment for Plaintiff. The ALJ's failure to discuss or analyze the above-quoted opinion from the lone provider of mental health treatment in the record does not qualify as harmless error. See Wagner v. Colvin, No. 6:16CV6161, 2017 WL 743732, at *4 (W.D.N.Y. Feb. 27, 2017) (unpublished) ("The ALJ's failure to consider the only medical opinion evidence regarding [the] plaintiff's mental health impairments was reversible error.").

Plaintiff additionally contends that "substantial evidence does not support the finding of an RFC for 'light' work." (Docket Entry 13 at 14; see also Docket Entry 16 at 3-5.) In support of that assertion, Plaintiff points out that, "since the [prior ALJ] decision of July 27, 2017, [Plaintiff] has required continued treatment for unrelenting back pain and gait problems, including strong opioid medications, all of which would be consistent with a limitation to sedentary exertion." (Docket Entry 13 at 14 (citing Tr. 368-72, 377-78, 382-85, 393-412, 414-23, 426-28, 430-32, 434-35, 438-39, 442-43, 659-61, 666-68, 670-78, 682-87).) According to Plaintiff, "[b]ecause substantial evidence does not support the finding of a 'light' RFC, and because [Plaintiff] was more than 50 years of age at the time of the adjudication, the decision should be vacated, reversed, and remanded for payment of benefits as of June 25, 2019, [Plaintiff]'s 50th birthday, as directed by Medical[-]Vocational Guidelines Rules 201.12 and 201.14." (Id. at

14

15 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, §§ 201.12, 201.14).)

Plaintiff's reliance on clinical and diagnostic findings which he contends support a sedentary RFC misinterprets this Court's standard of review. The Court must determine whether the ALJ supported his RFC analysis with substantial evidence, defined as "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), and not whether other record evidence weighs against the ALJ's analysis, Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). As outlined by the Commissioner (see Docket Entry 15 at 12-13 (citing Tr. 19-20, 459, 661, 665, 668, 1524, 1741, 1957)), the ALJ discussed substantial evidence in support of the light RFC:

- "physical examinations have shown <u>mild</u> lumbar paraspinal tenderness," and Plaintiff's "current pain management regime is tolerated well, without significant side effects" (Tr. 19 (emphasis added) (citing Tr. 665, 668));

- Plaintiff's "lumbar spine MRI scan showed only <u>mild</u> multilevel degenerative disease" (<u>id.</u> (emphasis added) (citing Tr. 668));

- Plaintiff's cervical degenerative disc disease "was treated conservatively with pain medication" (Tr. 20 (citing Tr. 1956));

15

- at a foot examination in January 2017, Plaintiff "had some equinus noted upon dorsiflexion of the foot with the knee in an extended position" and "some <u>mild</u> valgus of the rear foot" (<u>id.</u> (emphasis added) (citing Tr. 459)); and

- Plaintiff testified "that his medication combination of steroid injections and pain medications had been effective for his pain but he c[ould] no longer afford the steroid injections" (<u>id.</u>; <u>see also</u> Tr. 39).[8]

Those findings constitute substantial evidence to support the ALJ's RFC limiting Plaintiff to light work with frequent handling, fingering, reaching, and feeling with the upper extremities, no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps and stairs, frequent balancing, stooping, kneeling, and crouching, occasional crawling, and no concentrated exposure to extreme cold, noise, and hazards. (<u>See</u> Tr. 18.)

However, as discussed above, the ALJ neglected to discuss or evaluate the opinion of Plaintiff's treating physician Dr. Farrington, who elaborated at some length on the impact of Plaintiff's physical impairments:

> I have been the primary care provider for [Plaintiff] since November 2013. . . . [H]e related to me that starting in 2012 he began having low back pain which was now radiating down his legs. His pain continued to

---

[8] Plaintiff's alleged inability to afford steroid injections (<u>see</u> Tr. 39) diminishes, to a certain extent, the probative value of the ALJ's observation that Plaintiff's "combination of steroid injections and pain medications had been effective for his pain" (Tr. 20); however, Plaintiff did not state that he could no longer afford his <u>pain medications</u> (<u>see</u> Tr. 39; <u>see also</u> Tr. 44-46 (reflecting that Plaintiff remained able to afford meclizine, Lexapro, and gabapentin, as well as a shoulder injection and MRI)) and thus the ALJ's point remains valid to the extent Plaintiff's <u>pain medications</u> effectively controlled his pain.

16

worsen and he soon was experiencing severe pain and numbness in both legs, left greater than right. . . .

At that time, he had an MRI of the lumbar spine revealing disc herniation at L3-L4 and his neurosurgery evaluation led to conservative treatment with medication and epidural injections which dulled the pain but did not fix it.

After an automobile accident in 2014 his back and leg pain continued to worsen. He has developed osteoarthritis in the joints of his legs, knees, ankles and feet. <u>He is unable to stand for longer than 15 minutes</u>.

He has developed severe hearing loss in both ears. He has developed frequent, periodic vertigo. <u>He cannot stoop or bend and uses an [sic] assistive device to walk</u>. He developed migraine headaches and frequent falls. He remains on the same dose of medication he was started on and does not seek increasing doses.

He has a mentally challenged son that he takes to school every day and picks him up every evening. Some of the falls are experienced during these activities or in grocery stores or public places where he has to have help to get up and experiences significant embarrassment. He recently fell and injured his right shoulder and his neck. He . . . has a pending MRI for when the Covid-19 restrictions are lifted.

Every time I saw this patient for the first 5 years he talked to me about positions he had applied for and every one has ended the same, he aces everything until the physical capacity exam and is turned down for the job. His disabilities have left him unable to continue to apply for employment.

I have referred him over and over to all sorts of specialist and I do not have a list of diagnoses that I can present to you other than degenerative disc disease and the list of symptoms mentioned above.

. . .

17

> Unless you have evidence that proves that this
> application is not legitimate, I think the lack of hard
> diagnoses is not sufficient for you to deny this man
> disability.

(Tr. 754-55 (emphasis added).) Dr. Farrington's opinions that Plaintiff could not stand for longer than 15 minutes, stoop, or bend, and needed an assistive device to walk conflict with the ALJ's RFC (compare Tr. 18, with Tr. 754-55) and, as pointed out by Plaintiff (see Docket Entry 13 at 15), would limit Plaintiff to sedentary work, thus raising the possibility that Rule 201.14 of the Medical-Vocational Guidelines would direct a conclusion of disability. See 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.14 (deeming "[d]isabled" individual aged 50 years old with high school or more education and skilled past work that does not permit direct entry into skilled work). Accordingly, the ALJ's failure to address those opinions constitutes an additional, prejudicial error requiring remand.

For the foregoing reasons, Plaintiff's first issue on review establishes reversible errors by the ALJ with respect to the RFC and entitles Plaintiff to remand.

## 2. VE Testimony Regarding Job Numbers

Plaintiff next asserts that "[t]he ALJ err[ed] by concluding that [Plaintiff] could perform other work existing in significant numbers in the national economy where there was no foundation for th[o]se findings in the [DOT] or other reliable publications, and the ALJ fail[ed] to resolve conflicts in the VE's testimony on the

18

issue of job numbers." (Docket Entry 13 at 15 (underscoring omitted); see also Docket Entry 16 at 5-6.)[9] In particular, Plaintiff observes that "[t]he VE testified that the job numbers she provided were based on [Standard Occupational Classification ('SOC')] codes (which come from the Occupational Employment Quarterly, II (OEQ)) which include both full- and part-time positions and more than one [DOT] code that may or may not have different skill and exertional requirements than those provided in the RFC." (Docket Entry 13 at 17 (citing Tr. 59-63).) Plaintiff emphasizes that "[t]he VE admitted that she did not adjust job numbers based on the individual [DOT] numbers, and that available job numbers could be lower" (id. (citing Tr. 59-63)), as well as that "[t]he ALJ did not ask for an accurate accounting of national job numbers or clarification as to why the VE did not believe that she needed to provide [DOT]-specific job numbers" (id.). According to Plaintiff, "other courts have held that an ALJ may rely on a 'VE's proposed job numbers derived from OEQ data when the VE further adjusts the number of jobs in the broader OEQ category to

_____

[9] Plaintiff maintains that the ALJ's error with respect to the VE's cited job numbers constituted a violation of Social Security Ruling 00-4p, Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 18987004, at *1 (Dec. 4, 2000) ("SSR 00-4p"), "which directs the ALJ to inquire about conflicts between the [VE's] testimony and the [DOT]" and "to identify . . . and [] resolve any apparent conflicts before relying on VE testimony." (Docket Entry 13 at 15 (citing Pearson v. Colvin, 810 F.3d 204, 210-11 (4th Cir. 2015)).) Plaintiff's second assignment of error contesting the VE's job numbers does not implicate SSR 00-4p, because the DOT does not provide job numbers, see Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 446 (2d Cir. 2012) ("The [DOT] . . . just defines jobs[ and ] does not report how many such jobs are available in the economy."), and thus no conflict existed between the VE's cited job numbers and the DOT.

19

a number that reflects the number of jobs for the cited [DOT] occupation and provides a reasonable basis for having done so.'" (Id. at 18 (quoting Boston v. Colvin, No. 4:14CV206, 2016 WL 721563, at *11 (E.D.N.C. Feb. 2, 2016), recommendation adopted, 2016 WL 738762 (E.D.N.C. Feb. 23, 2016) (unpublished), and citing Cunningham v. Berryhill, No. 3:19CV54, 2020 WL 400638, at *4 (W.D.N.C. Jan. 23, 2020) (unpublished)).)

The ALJ here queried the VE whether an individual with Plaintiff's age, education, and past work experience, as well as limited to Plaintiff's RFC, could perform any jobs existing in significant numbers in the national economy (see Tr. 53-54) and, in response, the VE opined that such an individual would remain capable of performing the jobs of "laundry folder, [DOT] code 369.687-018[,] . . . a light job with a[ Specific Vocational Preparation ('SVP')] of 2 . . . [with] approximately 400,000 in the national economy," cashier II, [DOT] code 211.462-010[,] . . . a light job with an SVP of 2 . . . [with] approximately 1.2 million in the national economy," and "shipping and receiving weigher, [DOT] code 222.387-074[,] . . . a light job with an SVP of 2 . . . [with] approximately 72,000 within the national economy" (Tr. 55 (emphasis added)).

On cross-examination, Plaintiff's counsel and the VE had the following exchange:

> [ATTY] . . . [H]ow did you arrive at the [job] numbers that you provided?

[VE] I used the [OEQ].

[ATTY] Okay.  And that is the [OEQ] II?

[VE] I don't know the number, quite honestly.  It's the most recent edition.

[ATTY] Okay.  And the publisher of the OEQ, that's a private company and not a government agency, correct?

[VE] Correct.

[ATTY] Okay.  And the OEQ, they arrive at their numbers . . . provided by aggregating the numbers that [U.S. Department of Labor ('DOL')] and the Census Bureau provide, correct?

[VE] I believe so.

[ATTY] And the numbers that the DOL and the Census Bureau provide, those are in SOC codes and not [DOT] codes, correct?

[VE] Correct.

[ATTY] And SOC codes are broader designations than [DOT] codes?

[VE] Yes.

[ATTY] So a single SOC code could contain multiple [DOT] codes, right?

. . .

[VE] That's correct.

. . .

[ATTY] . . . Each [DOT] code that exists within the SOC code, they may not all have the same skill and exertional requirements, correct?

[VE] That's correct.

[ATTY] Thank you.  And you did adjust for the number in SOC codes to reflect the number of jobs for only the specific [DOT] codes you cited, correct?

21

[VE] <u>That's not correct</u>.

[ATTY] Okay.  So you did not give numbers for [<u>DOT</u>] codes?

[VE] Well, it is for the [<u>DOT</u>] code but it's for the SOC code.

[ATTY] Okay.  And –

[VE] <u>But I did limit it by the limitations of course in the hypothetical</u>.

[ATTY] So I just want to make sure that I understand. Please correct me if I'm wrong.  You found the [<u>DOT</u>] code that suited the client's ability based on the hypothetical.  And then the numbers that you provided are for the SOC code that that [<u>DOT</u>] code falls into.

[VE] That's correct.

[ATTY] Okay.  And the numbers that you provided, those are for full-time positions only?

[VE] I believe it's for full-time and part-time.

[ATTY] . . . And so I would just like to reiterate that a specific SOC code may contain additional [<u>DOT</u>] codes that do not conform to the [ALJ]'s hypothetical.  Is that correct?

[VE] That's correct.

[ATTY] So <u>those numbers may in fact be lower for the specific job cited</u>?

[VE] <u>They could be</u>.

(Tr. 59-61 (emphasis added).)

Following the hearing, Plaintiff's counsel submitted objections to the VE's testimony (<u>see</u> Tr. 352-57), arguing that "[t]he VE's testimony was flawed and unreliable because the VE did not adjust the numbers of jobs provided by the [OEQ] as [SOC] codes down to the specific [<u>DOT</u>] codes, as required by SSA" (Tr. 352).

22

In particular, Plaintiff lodged the following complaint against the VE's job numbers:

> Laundry Folder in SOC code 51-9198 is included with 552 other [DOT] coded occupations, 144 of which are rated as Heavy or Very Heavy RFC, which violates the terms of the ALJ's [dispositive,] second hypothetical question. Additionally, 101 of those 553 are SVP 3 and above, also violating the requirements of the ALJ's second hypothetical question. Cashier 2 in SOC code 41-2011 is included with 17 other [DOT] coded occupations, 12 of those 18 are SVP 3 or above, which violates the requirements of the ALJ's second hypothetical question. Shipping/Receiving Weigher in SOC code 43-5111 is included with 32 other [DOT] coded occupations, 9 of which are rated as Medium or Heavy RFC, which violates the terms of the ALJ's second hypothetical question. Additionally, 21 of those 33 are SVP 3 or above, which violates the terms of the ALJ's second hypothetical question.

(Tr. 355.)

The ALJ subsequently adopted the VE's testimony as to Plaintiff's ability to perform the three jobs in question, as well as the jobs' incidence in the national economy, and then addressed Plaintiff's objections to the VE's jobs numbers as follows:

> There is no valid reason why the [VE] cannot rely on computerized data as a source of job numbers. The [VE] did not use SCO [sic] codes to supplant the [DOT], but it was used to supplement the [DOT] with the availability of jobs that [Plaintiff] could perform. Since the occupational evidence provided by the [VE] was consistent with the occupational information supplied by the [DOT], except as noted below, the [VE]'s use of the SCO [sic] Codes and the [DOT] did not conflict with the regulations. The regulations do not require that the Commissioner or the [VE] rely exclusively on classifications in a particular source such as [DOT]. The pertinent regulation, 20 CFR [§] 404.1566(d), (e), provides that the [SSA] may take administrative notice of reliable job information available from various government and other publications including [DOT]. However, occupational evidence provided by the [VE]

23

generally should be consistent with the occupational information supplied by the [DOT]. See SSR 00-4p; Ewing v. Commissioner of Social Security, 2010 WL 6090420 (W.[D]. Mich. 2010); McFerren v. Commissioner of Social Security, 2012 WL 1865467 (N.D. Ohio 2012).

The [VE] testified that the testimony given concerning these limitation [sic] was based on professional experience. The [ALJ] accepts this testimony as reconciling any discrepancies between the [VE]'s testimony and the [DOT]. The [VE] is a vocational rehabilitation counselor/specialist who was first certified in the field in 1997. She has completed post-graduate work in rehabilitation counseling. She has worked as a rehabilitation consultant and testified in her professional capacity in numerous state and federal courts. [Plaintiff's counsel] did not offer any specific objections to the [VE]'s qualifications at the hearing. Thus, pursuant to SSR 00-4p, the [ALJ] has determined that the [VE]'s testimony is consistent with the information contained in the [DOT]. The [VE] testified any testimony that may be inconsistent such as that regarding contact with others, crisis situations, decision-making, changes in the workplace, attention and concentration, and differentiations in climbing was based on her education, experience and knowledge of how jobs are performed in the workplace.

(Tr. 22-23.) The ALJ's above-quoted discussion of Plaintiff's objections did not adequately resolve the matter. The ALJ seemed to interpret Plaintiff's objections as a generalized challenge to the VE's use of the OEQ (and SOC codes) to generate job numbers, and did not address Plaintiff's more specific argument that the SOC codes contain multiple DOT codes and thus produce over-inclusive job numbers. (See id.)

Moreover, the VE should have adjusted the number of laundry folder and shipping and receiving weigher jobs she cited to account for DOT occupations within the applicable SOC codes at higher

24

exertional levels than Plaintiff's light exertion RFC.[10] As addressed by a neighboring district court:

> [C]ourts have consistently upheld an ALJ's reliance on a VE's proposed job numbers derived from OEQ data when the VE further adjusts the number of jobs in the broader OEQ category to a number that reflects the number of jobs for the cited [DOT] occupation and provides a reasonable basis for having done so.
>
> . . .
>
> These cases illustrate that, despite the lack of specificity of the OEQ job incidence data, it is possible for a VE to make a reasonable adjustment to reflect [DOT]-specific job numbers by calling on other available sources as well as professional experience.

Boston, 2016 WL 721563, at *11-12 (emphasis added); see also Taylor v. Colvin, No. CIV.A. 140573, 2015 WL 3603957, at *14 (E.D. La. June 5, 2015) (unpublished) (upholding ALJ's decision where "the VE quite clearly testified that the job numbers that she provided for Census Code 540 were only for light, unskilled positions, as required by the ALJ's hypothetical question, and not the other 13 positions that fell under the [DOT] job title which included skilled and semiskilled occupations"); Vandermark v. Colvin, No. 3:13CV1467, 2015 WL 1097391, at *16 (N.D.N.Y. Mar. 11,

---

[10] Plaintiff's argument that DOT occupations rated at SVP 3 or higher within a given SOC code also "violate[d]" the ALJ's RFC falls short. (Tr. 355.) The ALJ's RFC precluded complex decision-making, crisis situation, and constant changes in routine, as well as restricted Plaintiff to frequent interaction with others. (See Tr. 18.) Plaintiff does not explain how those non-exertional limitations would preclude jobs rated at SVP 3 or higher, which reflects only the length of time required for an individual to learn the job, see DOT, App'x C, ("Components of the Definition Trailer"), § II ("Specific Vocational Preparation"), 1991 WL 688702. Thus, as Plaintiff has not argued that the SOC code for Cashiers contains any DOT occupations at higher exertional levels than his light-exertion RFC, Plaintiff has not shown any infirmity (other than an undeveloped assertion that the OEQ numbers included part-time jobs, see Docket Entry 13 at 17)) in the VE's cited numbers for the cashier II job.

2015) (unpublished) (rejecting the plaintiff's argument where VE based his adjustment of job numbers on personal placement of clients in jobs, collaboration with other professionals, and twice-yearly adjustments to account for market factors such as unemployment); Small v. Colvin, No. 1:12CV236, 2013 WL 1912892, at *8 (D. Me. Mar. 30, 2013) (unpublished) (approving VE's reliance on SOC code job numbers where he provided DOT-specific job numbers based on knowledge that one of DOT jobs constituted "predominant job" of three jobs within broader SOC code and personal observation of newspaper job openings for particular DOT job), recommendation adopted, 2013 WL 1912862 (D. Me. May 8, 2013) (unpublished); Nichols v. Astrue, No. CIV.A. 10–11641, 2012 WL 474145, at *12 (D. Mass. Feb. 13, 2012) (unpublished) (finding no error where VE adjusted job numbers from SOC code to reflect only DOT occupations that would accommodate the claimant's standing/walking limitation); but see Liskowitz v. Astrue, 559 F.3d 736, 745 (7th Cir. 2009) (finding no error in ALJ's reliance on VE's testimony and refusing to "impose impossible burdens on the VE" where "VE testified that she had 'no way of knowing' how many of the jobs that she had identified were part-time jobs" because that "information was not contained in the data sources on which she based her testimony,"

and the plaintiff's "counsel conceded . . . that *no* government data source contain[ed] th[at] information").[11]

For the reasons that follow, however, any errors by the VE in failing to adjust her job numbers and by the ALJ in failing to adequately address Plaintiff's post-hearing objections remain harmless under the circumstances of this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Even if some of the DOT occupations within the applicable SOC codes for laundry folder and shipping and receiving weigher entailed medium, heavy, or very heavy exertional levels and thus did not fit within the ALJ's light-exertion RFC, the VE testified that 1.2 million cashier jobs existed in the national economy. "[F]ar smaller figures would still suffice to satisfy the Commissioner's [step five] burden." Guiton v. Colvin, 546 F. App'x 137, 142 (4th Cir. 2013) (citing Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (finding 110 jobs in state a significant number of jobs)). Accordingly, the Court should find "that the

_____

[11] The VE's testimony raised a degree of ambiguity as to whether she adjusted the SOC-based job numbers to reflect DOT-specific numbers. She first testified unequivocally that she did not adjust the numbers (see Tr. 60), but then stated that she did "limit it by the limitations of course in the hypothetical" (id. (emphasis added)). That latter testimony could mean either that she only cited jobs that would accommodate the RFC's restrictions or that she limited the jobs' numbers to DOT occupations that fit within the RFC. Given that ambiguity, the VE's testimony does not provide the Court with a sufficient basis to find that she adjusted the job numbers to reflect DOT-specific numbers.

jobs numbers the VE provided, although perhaps somewhat imprecise, were sufficiently reliable to support the ALJ's conclusion." Guiton, 546 F. App'x at 142-43.

In short, Plaintiff's second issue on review falls short.

### 3. Opinion Evidence

Lastly, Plaintiff contends that "[t]he ALJ err[ed] by failing to follow the rules for evaluating medical opinions and by failing to properly determine the persuasiveness of the opinion." (Docket Entry 13 at 21 (bold font and underscoring omitted); see also Docket Entry 16 at 3.) More specifically, Plaintiff argues that "the ALJ did not properly evaluate the opinion of [Dr. Anthony]" (Docket Entry 13 at 21), because the ALJ "fail[ed] to explain . . . why he did not adopt her findings in the RFC, particularly those involving a limitation to simple repetitive tasks and limitation in [CPP]" (id. at 23). According to Plaintiff, "[h]ad the ALJ included th[o]se limitations in his RFC, the occupational base would have been significantly eroded, and [Plaintiff] may have been found disabled." (Id. at 23-24.) Plaintiff further faults the ALJ for "summarily dismiss[ing] the opinions of the [s]tate agency consultants by stating that they were 'not persuasive based on the medical evidence of record.'" (Id. at 21 (quoting Tr. 21); see also id. at 22 ("'An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion,' but that appears to be what he does in this case as he cites no medical

28

evidence in support." (quoting Williams v. Colvin, No. 4:14CV40, 2015 WL 73818, at *5 (E.D.N.C. Jan. 6, 2015) (unpublished))).) Plaintiff also challenges the ALJ's failure to discuss or weigh the opinions of his treating physician Dr. Farrington. (See Docket Entry 16 at 3.) Plaintiff's contentions with respect to Drs. Anthony and Farrington have merit and require remand.

As discussed in the context of Plaintiff's first assignment of error, despite finding "persuasive" Dr. Anthony's opinion that Plaintiff could "sustain attention to perform simple repetitive tasks" (id.), the ALJ neither included a limitation to simple repetitive tasks in the RFC (see Tr. 18), nor explained why he omitted such a restriction (see Tr. 18-21), and entirely failed to discuss Dr. Anthony's opinions as part of his analysis of the RFC (see id.). The ALJ also failed to discuss (much less determine the persuasiveness of) Dr. Farrington's opinions. (See Tr. at 18-21). As detailed supra, those errors prejudiced Plaintiff.

Plaintiff's argument regarding the state agency medical consultants, however, misses the mark. The consultants both found that Plaintiff remained capable of medium work (see Tr. 96-98, 129-31, 146-48) and, as pointed out by the Commissioner, "[g]iven that the ALJ found Plaintiff more limited than the state agency [consultants] did, Plaintiff has not demonstrated that the ALJ's analysis of th[o]se opinions prejudiced his claim[s] in any way." (Docket Entry 15 at 11.) The ALJ did, however, fail to discuss and determine the persuasiveness of the state agency psychological

29

consultants' opinions (see Tr. 20-21) and, thus, upon remand, should include an analysis of those opinions in the decision.

### III.   CONCLUSION

Plaintiff has established errors warranting remand.[12]

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include 1) re-evaluation of the opinions of consultative psychological examiner Dr. Anthony, and 2) evaluation of the opinions of treating physician Dr. Farrington and the state agency psychological consultants in accordance with 20 C.F.R. §§ 404.1520c, 416.920c.  As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) should be granted in part, i.e., to the extent it requests remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) should be denied.


/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 28, 2021

---

[12] Plaintiff's Memorandum alternatively asks that the ALJ's "decision [] be vacated, reversed, and remanded for payment of benefits as of June 25, 2019." (Docket Entry 13 at 15.)  In this case, the Court should opt for remand, because Plaintiff's Memorandum does not adequately develop a cogent argument justifying reversal for an award of benefits.  (See id.)

30